# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Gray 2011 Nissan Maxima bearing Texas temporary license ) Case No. 21-mc-209
plate 70431N6, VIN:1N4AA5AP8BC854834, located at the )
FBI, 2901 Leon C. Simon Blvd., New Orleans, LA  See Att. A )

**SEALED**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Eastern___ District of ___Louisiana___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) and 21 U.S.C. § 841 | Knowingly possessing a firearm that has an effect on interstate commerce while knowing one is a prohibited person.  Possession with the intent to distribute and distribution of a federal controlled substance including cocaine. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew Strickland
*Applicant's signature*

Matthew Strickland, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-2-2021

*Judge's signature*

City and state: New Orleans, Louisiana        HON. MAGISTRATE JUDGE KAREN WELLS ROBY
*Printed name and title*

<div style="text-align:right; color:red">**SEALED**</div>

<div style="text-align:center">
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
</div>

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A GRAY 2011 NISSAN MAXIMA BEARING TEXAS TEMPORARY LICENSE PLATE 70431N6, VIN: 1N4AA5AP8BC854834, LOCATED AT THE FBI NEW ORLEANS FIELD OFFICE, 2901 LEON C. SIMON BLVD., NEW ORLEANS, LA 70126 | *<br>*<br>*   CASE NO.  21-mc-209<br>*<br>*<br>*    *    * |

<div style="text-align:center">**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**</div>

I, Matthew Strickland, being first duly sworn, hereby depose and state as follows:

<div style="text-align:center">**INTRODUCTION AND AGENT BACKGROUND**</div>

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a gray 2011 Nissan Maxima bearing Texas Temporary License Plate 70431N6, VIN: 1N4AA5AP8BC854834 ("**TARGET VEHICLE**") further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am currently assigned to the New Orleans Violent Crime Task Force ("Task Force"). In that role my primary

duties involve investigating fugitive matters, armed robberies, extortions, gang activity, violent offenses, and drug trafficking. I started my law enforcement career as a patrolman in Hattiesburg, Mississippi from 2016-2019. In that position, I effectuated hundreds of arrests and conducted thousands of investigations. I accepted a position with the FBI in October of 2019 and attended five months of special agent training in Quantico, Virginia. Since then, I have been assigned to the New Orleans field office.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1), 18 U.S.C. 924(c), and 21 U.S.C. 841 have been committed.

**PROBABLE CAUSE**

5. In August of 2020, the FBI New Orleans Violent Crime Task Force received information of illegal narcotics and firearm activity being conducted at 1218 Gallier Street, New Orleans, Louisiana 70117 ("target residence"). The information was processed through the FBI National Threat Operations Center. The FBI began surveilling the location in an attempt to observe any crimes being committed. During this time, FBI Task Force Officer ("TFO") Chad Cockerham, a New Orleans Police Department Detective embedded with the Task Force, learned from multiple residents of that area that the criminal activity of the occupants of the target residence is a nuisance to the community. Further, investigators learned of a shooting incident that occurred at the

intersection of Marias Street and Gallier Street, a few houses down from the target residence, on December 23, 2020 at 6:21 p.m.

6. The Federal Bureau of Investigation elected to canvass the area of the shooting incident in an attempt to locate video that would assist the New Orleans Police Department in the state investigation. Video was found depicting a subject known to FBI agents as Christopher MAY (B/M, 01/12/1992) loitering on the porch of the target residence approximately one hour before the shooting holding a rifle consistent to the style of a "Draco." Agents continued to view the surveillance video and observed five other males on the porch with MAY as he possessed the firearm. While this is ongoing, two young children are loitering on the porch among the group of male subjects. MAY was observed to have free range of access to the target residence and would come and go at will. The location is currently being rented by the sister of MAY.



(May pictured in green hat holding a "Draco")

3

7. The FBI Task Force is familiar with MAY due to his ongoing criminal activity within the 5th Precinct of New Orleans. MAY was convicted for felony possession of cocaine on January 23, 2012, in violation of Louisiana Revised Statute Title 40, Section 967(c)(2) in Orleans Parish Criminal District Court, Case Number 506805, Section "H." MAY pleaded guilty to a second felony on August 7, 2014, for being a felon in possession of a firearm in the Orleans Parish Criminal District Court, Case Number 512896, Section "K."

8. Because of his felony convictions, MAY is prohibited from possessing a firearm. TFO Cockerham, prepared an arrest warrant for MAY in the ongoing-state investigation for a violation of Louisiana Revised Statue 14:95.1, possession of a firearm by a person convicted of certain felonies. TFO Cockerham submitted the arrest warrant to an Orleans Parish Magistrate Commissioner who approved the warrant for the arrest of MAY. TFO Cockerham also applied for a search warrant for the target residence to locate MAY, all firearms, ammunition, and firearms paperwork. The search warrant was issued by an Orleans Parish Commissioner granting the search of the location.

9. On Friday, January 29, 2021, at approximately 8:30 a.m., FBI agents surrounded the target residence in an attempt to arrest MAY and conduct the search. Agents began to knock at the front door. As they were preparing to breach the front door, an adult female opened it and was standing in the front room of the shotgun-styled house. Agents standing at the front of the residence continued to give commands to anyone who remained in the residence to come to the front of the residence. A ten-year-old juvenile male walked from the rear of the house.

10. From the time agents approached to breach the front door, another set of agents were circling around the house to surround and cordon the scene. Before the front door was opened, agents heard a commotion coming from inside the rear of the residence. The commotion continued

4

as agents were moving along the side of the house. As agents made it around the corner to the rear of the residence, the commotion stopped. Agents then observed a Glock 23 .40 caliber handgun with a high-capacity magazine (30 round capacity, holding 20 rounds) a few feet from the rear door of the residence.

9. At this time of the morning, there was condensation on the surface of the ground from overnight dew. The firearm did not have any condensation on the weapon indicating it had just been placed outside. Due to the time of day, cool temperature, and location of the weapon, it would have had condensation if it were left outside for any long period of time. No other persons were seen fleeing the scene.

10. The entry team at the front of the house continued to call out for anyone who was in the rear of the residence to come out. Agents believed based on all the commotion in the rear of the residence that an individual was refusing to comply. At this point, the house was tactically cleared and a female child in a middle room was found asleep. Agents continued through the shotgun styled home and located MAY in the rear bedroom. He was at the foot of a twin bed and close to the rear door of the residence. Several commands were given to MAY which he initially refused, but eventually complied by putting his hands in the air.

11. Agents observed the rear door had a two by four piece of wood what would be placed across the rear door to barricade it. However, that piece of wood was resting against the rear wall of the residence. Agents observed the rear door could only be opened a quarter of the way due to the position of the bed inside of the bedroom. Investigators learned while interviewing the adult female of the residence (lease holder) that when MAY slept at the location he always slept on the sofa in the front room of the residence. The adult female stated MAY never sleeps in the rear room of the residence.

12. Based on this information from the adult female, investigators believe when agents approached the front of the location and announced themselves MAY fled to the back of the residence. Investigators believe MAY then removed the two by four board from the rear door and pulled the bed back from the door which caused the commotion being heard in the rear of the house. The ongoing commotion being heard was MAY pushing the bed back close to the door after MAY threw the weapon in the back yard.

13. Continued search of the house revealed 23.4 grams of powder cocaine, a digital scale, and plastic baggies found in a cut-out area of the wall. These items are consistent with distribution of cocaine.



(Photograph of cocaine seized from target residence)

14. MAY has described on recorded jail phone calls that during the search of the home, approximately $5,000 cash was not found by investigators. He instructed family members to

retrieve it from a hiding spot in the kitchen. This amount of U.S. currency co-located in an area with a large amount of cocaine, baggies, and a scale is consistent with distribution of narcotics.

15. Multiple hand-to-hand narcotics transactions have been seen during surveillance of MAY and his associates while loitering on the front porch of the target residence and surrounding area.

16. Throughout the investigative process described above, Investigators determined that the TARGET VEHICLE was backed into a parking spot adjacent to the residence. Previous surveillance indicated that MAY was the driver of the TARGET VEHICLE. On one occasion during surveillance, MAY was seen by agents retrieving a firearm which was left in his vehicle. Based on this information, Investigators secured the TARGET VEHICLE and it was towed to the FBI New Orleans Field Office.

## CONCLUSION

Due to **MAY**'s activity at the target residence, the presence of the firearm near **MAY**, the prohibition against his possession of firearms, and the presence of his vehicle, the **TARGET VEHICLE**, near the scene coupled with intelligence that **MAY** keeps additional firearms in the **TARGET VEHICLE**, I respectfully request a search warrant for the **TARGET VEHICLE** described herein.

Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of 18 U.S.C. § 922 (g)(1), 18 U.S.C. § 924(c), and 21 U.S.C. § 841 may be located in the **TARGET VEHICLE** described in Attachment A.

## REQUEST FOR SEALING

I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

\_\_s/ Matthew Strickland_____
Matthew Strickland
Special Agent
Federal Bureau of Investigation

## ELECTRONIC CERTIFIFCATION

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Sworn to and subscribed before me
this _____ day of February 2021, at _ .m.
New Orleans, Louisiana.

_____
HONORABLE KAREN WELL ROBY
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The TARGET VEHICLE is a 2011 gray Nissan Maxima bearing Texas Temporary License Plate 70431N6, VIN: 1N4AA5AP8BC854834.



# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

The following items located within the 2011 gray Nissan Maxima bearing Texas Temporary License Plate 70431N6, VIN: 1N4AA5AP8BC854834, as described in Attachment A that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c), and 21 U.S.C. 841 pertaining to the following matters:

A. Any documents or records establishing ownership, registration, users, financiers and other relevant information regarding the gray Nissan Maxima described in Attachment A.

B. Any items that constitute evidence of drug distribution, to include but not limited to: Drug and/or other controlled substances, currency, paraphernalia or equipment used in the preparation, packaging, concealment, or distribution of controlled substances.

C. Wireless communication devices and internet-connected devices, including cellular telephones, smartphones, paging devices, tablets, and computers.

D. Any and all secured and/or locked safes, boxes, and/or hidden compartments, wherein the items described in item A may be located.

E. Firearms, ammunition, and firearms accessories used in furtherance of drug trafficking.

F. Evidence of user attribution showing who used or owned any cellular telephones that are seized.